








JRL   5/28/03   10:25
3:03-CV-00352   EAGLE PRECISION V. EATON LEONARD
*13*
*ANSCNTCLM.*

FILED
03 MAY 27 PM 4:10
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY: _____ DEPUTY

| | |
|---|---|
| 1 | RUTTER HOBBS & DAVIDOFF INCORPORATED |
| 2 | FRANK D. HOBBS (State Bar No. 076790) |
|   | OLIVIA GOODKIN (State Bar No. 100800) |
| 3 | GEOFFREY M. GOLD (State Bar No. 142625) |
|   | 1900 Avenue of the Stars, Suite 2700 |
| 4 | Los Angeles, California 90067-4301 |
|   | Telephone: (310) 286-1700 |
| 5 | Facsimile: (310) 286-1728 |
| 6 | Attorneys for Plaintiffs and Counter-defendants |
|   | EAGLE PRECISION TECHNOLOGIES, INC., |
| 7 | EAGLE TECHNOLOGIES SERVICES, LTD. and |
|   | Counter-defendant EATON LEONARD, INC. |

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| EAGLE PRECISION TECHNOLOGIES, INC., an Ontario, Canada corporation, and EAGLE TECHNOLOGIES SERVICES, LTD., an Indiana corporation, | ) ) ) ) ) | Civil Action No.: 03CV352 IEG (JAH) Judge Irma E. Gonzalez |
| Plaintiffs, | ) ) | |
| v. | ) ) | ANSWER OF COUNTER-DEFENDANTS EAGLE PRECISION TECHNOLOGIES, INC., |
| EATON LEONARD ROBOLIX, INC., a California corporation, | ) ) ) | EAGLE TECHNOLOGIES SERVICES, LTD. AND EATON LEONARD, INC. TO COUNTERCLAIMS |
| Defendant. | ) ) | |
| EATON LEONARD ROBOLIX, INC., a California corporation, | ) ) ) | |
| Counterclaimant, | ) ) | |
| vs. | ) ) | |
| EAGLE PRECISION TECHNOLOGIES, INC., an Ontario, Canada corporation, EAGLE TECHNOLOGIES SERVICES, LTD., an Indiana corporation, EATON LEONARD, INC., a California corporation, CANADIAN IMPERIAL BANK OF COMMERCE, a Canadian corporation and THE C. F. BOHAM COMPANY, INC., dba THE HAMER GROUP, a California corporation, | ) ) ) ) ) ) ) ) ) ) ) | |
| Counter-defendants. | ) ) | |

Counter-defendants Eagle Precision Technologies, Inc., Eagle Technologies Services, Ltd. and Eaton Leonard, Inc. ("Counter-defendants") for themselves alone, hereby answer the Counterclaims of Counter-claimant Eaton Leonard Robolix, Inc., as follows:

1. Counter-defendants admit the allegations contained in paragraph 1 of the Counterclaims, except insofar as it is alleged that the agreements underlying the Complaint in this action require that the disputes raised in the Complaint be submitted to binding arbitration. Counter-defendants reserve their right to assert that the Counterclaims asserted by Eaton Leonard Robolix, Inc. arising out of the "Shareholders Agreement" should be submitted to binding arbitration under the provisions of such agreement among Eagle Precision Technologies, Inc., Eaton Leonard, Inc., Financiere Robolix, S.A.R.L. and Eaton Leonard Robolix, Inc.

2. Counter-defendants admit the allegations contained in paragraph 2 of the Counterclaims.

3. Counter-defendants admit the allegations contained in paragraph 3 of the Counterclaims.

4. Counter-defendants admit the allegations contained in paragraph 4 of the Counterclaims.

5. Counter-defendants deny that Eaton Leonard, Inc. is a suspended corporation. Counter-defendants allege that Eaton Leonard, Inc. has its principal place of business in San Diego County, California. Except as denied or alleged above, Counter-defendants admit the allegations contained in paragraph 5 of the Counterclaims.

6. Counter-defendants admit that Canadian Imperial Bank of Commerce owns in excess of 98 percent of the outstanding common shares of Eagle Precision Technologies, Inc. Except as alleged, Counter-defendants do not have sufficient information or belief to allow them to truthfully admit or deny the allegations contained in paragraph 6 of the Counterclaims and, on that basis, deny such allegations.

7. With respect to paragraph 7 of the Counterclaims, Counter-defendants admit that on or about October 26, 2001, Eaton Leonard, Inc. made a general assignment for the benefit

of creditors to The Hamer Group. Except as alleged above, Counter-defendants do not have sufficient information or belief to enable them to truthfully admit or deny the allegations contained in paragraph 7 of the Counterclaims, but believe such allegations to be true.

8. Counter-defendants allege that the allegations contained in paragraph 8 of the Counterclaims are indefinite insofar as they purport to incorporate unspecified later allegations in the Counterclaims in the phrase "as more particularly described below," and Counter-defendants do not admit or deny such allegations except as addressed later in this Answer. Except as alleged above, Counter-defendants admit the allegations contained in paragraph 8 of the Counterclaims.

9. Counter-defendants admit that in November, 1999, Eagle Precision Technologies, Inc. filed for protection under the *Companies' Creditors Arrangement Act*, the Canadian equivalent of the United States Bankruptcy Act, in Canada, and allege that the terms and requirements of orders of the Canadian courts speak for themselves. Except as expressly admitted herein, Counter-defendants do not have sufficient information of belief to enable them to truthfully admit or deny the allegations of paragraph 9 of the Counterclaims and, on that basis, deny such allegations.

10. Counter-defendants allege that at the time Eagle Precision Technologies, Inc. filed for protection under the *Companies' Creditors Arrangement Act*, it was indebted to Canadian Imperial Bank of Commerce for millions of dollars, Canadian. Counter-defendants admit that Mr. David Azoulay became Chief Restructuring Officer of Eagle Precision Technologies, Inc. in connection with those proceedings. Except as alleged or admitted above, Counter-defendants deny the allegations contained in paragraph 10 of the Counterclaims.

11. Counter-defendants allege that paragraph 11 of the Counterclaims is indefinite insofar as the use of the term "interlocking" is concerned. Counter-defendants admit that several written agreement were entered into among Eaton Leonard, Inc., Eagle Precision Technologies, Inc., Eagle Technologies Services, Ltd., Eaton Leonard Robolix, Inc. and others (not including Canadian Imperial Bank of Commerce) entitled substantially as alleged by Counterclaimants, in addition to other written agreements not mentioned by

Counterclaimants in their Counterclaims. Counter-defendants allege that to the best of their knowledge and understanding the written agreements among the parties did not include integration provisions. Counter-defendants allege that the written agreements mentioned in paragraph 11 of the Counterclaims were each related to the general circumstances surrounding the formation of Eaton Leonard Robolix, Inc., and the conditions under which it would conduct business. Except as alleged above, Counter-defendants deny the allegations contained in paragraph 11 of the Counterclaims.

12. Counter-defendants allege that paragraph 12 of the Counterclaims is indefinite insofar as the use of the term "interlocking" is concerned as described above. Counter-defendants allege that the provisions of the Shareholders Agreement referenced in the Counterclaims speak for themselves. Except as alleged above, Counter-defendants deny the allegations contained in paragraph 12 of the Counterclaims.

13. Counter-defendants allege that the provisions of the Asset Transfer and Subscription Agreement selectively referenced in the Counterclaims speak for themselves. Except as alleged above, Counter-defendants deny the allegations contained in paragraph 13 of the Counterclaims.

14. Counter-defendants allege that the provisions of the Asset Transfer and Subscription Agreement selectively referenced in the Counterclaims speak for themselves. Counter-defendants admit that David Azoulay approved the terms of the Asset Transfer and Subscription Agreement. Except as alleged above, Counter-defendants deny the allegations contained in paragraph 14 of the Counterclaims.

15. Counter-defendants admit that at the time the Asset Transfer and Subscription Agreement was signed, Eaton Leonard, Inc. had transferred certain assets to Eagle Precision Technologies, Inc., including the two patents referenced in paragraph 15 of the Counterclaims, and that the assets of Eagle Precision Technologies, Inc. were at the time pledged to Canadian Imperial Bank of Commerce as collateral for indebtedness of Eagle Precision Technologies, Inc. to Canadian Imperial Bank of Commerce. Except as alleged

RUTTER
HOBBS &
DAVIDOFF
INCORPORATED
LAWYERS

{4435.011-00191541.DOC- ()} -4-
ANSWER OF COUNTER-DEFENDANTS TO COUNTERCLAIMS

above, Counter-defendants deny the allegations contained in paragraph 15 of the Counterclaims.

16. Counter-defendants allege that the provisions of the Conveyance Agreement referenced in the Counterclaims speak for themselves. Except as alleged above, Counter-defendants deny the allegations contained in paragraph 16 of the Counterclaims.

17. Counter-defendants allege that the provisions of the License Agreement referenced in the Counterclaims speak for themselves. Except as alleged above, Counter-defendants deny the allegations contained in paragraph 17 of the Counterclaims.

18. Counter-defendants admit that before the execution of the License Agreement, the patents listed on Schedule A had been assigned to Eagle Precision Technologies, Inc., and believe that the patents listed on Schedule A to the License Agreement were pledged to Canadian Imperial Bank of Commerce as collateral for repayment of loans by Canadian Imperial Bank of Commerce to Eagle Precision Technologies, Inc. Counter-defendants admit that royalty bearing licenses were granted in certain of the patents listed on Schedule A to the License Agreement to "Pedrazoli, Bema and Trumpf Pulzer." Except as admitted, Counter-defendants deny the allegations contained in paragraph 18 of the Counterclaims.

19. Counter-defendants allege that the provisions of the Services Agreement referenced in the Counterclaims speak for themselves. Counter-defendants admit that the Services Agreement has been cancelled. Counter-defendants allege that paragraph 19 of the Counterclaims is indefinite in its use of the phrase "certain VMM materials that Eagle Services was using" in that it cannot be determined what "materials" are referenced. Counter-defendants admit that after the cancellation of the Services Agreement Eagle Technologies Services, Ltd. has continued to provide services on "certain ERIX products." Except as alleged above, Counter-defendants deny the allegations contained in paragraph 19 of the Counterclaims.

20. Counter-defendants have not, to the date of this Answer, been able to locate a copy of the "Sublease" referred to on the Counterclaims. Counter-defendants allege that the provisions of the Sublease referenced in the Counterclaims speak for themselves. Counter-

RUTTER
HOBBS &
DAVIDOFF
INCORPORATED
LAWYERS

{4435.011-00191541.DOC- ()}   -5-
ANSWER OF COUNTER-DEFENDANTS TO COUNTERCLAIMS

defendants admit that Eaton Leonard, Inc. was involved in a dispute with the landlord of the premises referred to in the Counterclaims, and that for a period of time did not pay rent to the landlord. Counter-defendants are informed and believe that ERIX was not "evicted" from the premises referred to in the Counterclaims. Except as alleged above, Counter-defendants deny the allegations contained in paragraph 20 of the Counterclaims.

21. Counter-defendants admit that at some time in 2001, Eaton Leonard, Inc. effectively ceased doing business. Except as alleged above, Counter-defendants deny the allegations contained in paragraph 21 of the Counterclaims.

22. Counter-defendants admit that they have applied for registration of certain trademarks including those listed in paragraph 22 of the Counterclaims. Except as alleged above, Counter-defendants deny the allegations contained in paragraph 22 of the Counterclaims.

23. Counter-defendants admit that Eaton Leonard, Inc. transferred certain assets to Eagle Precision Technologies, Inc. in or before 2001. Counter-defendants allege that the Counterclaims are indefinite in the use of the phrase "all or almost all of [Eaton Leonard, Inc.'s] remaining assets and business." Counter-defendants admit that on October 26, 2001, Eaton Leonard, Inc. made a general assignment of its assets, including the shares it held in ERIX, to Hamer, and that such an assignment is an event of default under the Shareholders Agreement. Counter-defendants allege that the referenced provisions of the Shareholders Agreement speak for themselves. Counter-defendants admit that Hamer remains the assignee for the benefit of creditors of Eaton Leonard, Inc. Except as alleged above, Counter-defendants deny the allegations contained in paragraph 23 of the Counterclaims.

24. Counter-defendants admit that in April 24, 2002 a letter of intent was executed for the purchase of Eaton Leonard, Inc.'s shares in ERIX as contemplated by the Shareholders Agreement, that ERIX has not paid for the shares, and that the sale of such shares to ERIX has not closed. Counter-defendants believe that Hamer notified ERIX of the interest of Canadian Imperial Bank of Commerce in Eaton Leonard, Inc.'s shares in ERIX as alleged in paragraph 24 of the Counterclaims. Counter-defendants allege that paragraph 24 of the Counterclaims

is indefinite in its use of the phrase "refused to allow Hamer to carry out the express terms of the Shareholder (sic) Agreement" so as not to permit Counter-defendants to truthfully admit or deny the allegation. Except as alleged above, Counter-defendants deny the allegations contained in paragraph 24 of the Counterclaims.

25. Counter-defendants allege that paragraph 25 of the Counterclaims is indefinite in that it fails to specify the conduct in which the counter-defendants were allegedly acting as agents of each other. Except as alleged above, Counter-defendants deny the allegations contained in paragraph 25 of the Counterclaims.

26. Counter-defendants deny the allegations contained in paragraph 26 of the Counterclaims. Counter-defendants specifically deny that Canadian Imperial Bank of Commerce was in control of Eagle Precision Technologies, Inc., Eaton Leonard, Inc. or Eagle Technologies Services, Ltd., or that there was a lack of separate identity between or among the defendants, or any of them.

27. In response to paragraph 27 of the Counterclaims, Counter-defendants incorporate paragraphs 1 through 26 above.

28. Counter-defendants admit the allegations contained in paragraph 28 of the Counterclaims.

29. Counter-defendants admit the allegations contained in paragraph 29 of the Counterclaims.

30. Counter-defendants allege that if the Shareholders Agreement is "interlocking" as alleged by ERIX, it has not performed all conditions covenants and promises on its part to be performed under such Agreement as alleged in the Complaint in this action. Beyond that, Counter-defendants presently lack knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph 30 of the Counterclaims and, on that ground, deny those allegations.

31. Counter-defendants admit that at the time the Shareholders Agreement was made, Eagle Precision Technologies, Inc. had pledged its assets to Canadian Imperial Bank of Commerce for the repayment of indebtedness, and that its interest in Eaton Leonard, Inc. was

RUTTER
HOBBS &
DAVIDOFF
INCORPORATED
LAWYERS

{4435.011-00191541.DOC- ()}                    -7-
ANSWER OF COUNTER-DEFENDANTS TO COUNTERCLAIMS

among such assets. Counter-defendants allege that to any extent that arrangement constitutes a breach of any agreement among ERIX and Counter-defendants, ERIX has not been injured in any way by such breach. Except as alleged above, Counter-defendants deny the allegations contained in paragraph 31 of the Counterclaims.

32. Counter-defendants deny the allegations contained in paragraph 32 of the Counterclaims.

33. Counter-defendants deny the allegations contained in paragraph 33 of the Counterclaims.

34. Counter-defendants deny the allegations contained in paragraph 34 of the Counterclaims.

35. Counter-defendants deny the allegations contained in paragraph 35 of the Counterclaims.

36. Counter-defendants deny the allegations contained in paragraph 36 of the Counterclaims.

37. In response to paragraph 37 of the Counterclaims, Counter-defendants incorporate paragraphs 1 through 36 above.

38. Counter-defendants admit the allegations contained in paragraph 38 of the Counterclaims.

39. Counter-defendants admit the allegations contained in paragraph 39 of the Counterclaims.

40. Counter-defendants allege that the provisions of the Conveyance Agreement referenced in the Counterclaims speak for themselves. Except as alleged above, Counter-defendants deny the allegations contained in paragraph 40 of the Counterclaims.

41. Counter-defendants deny the allegations contained in paragraph 41 of the Counterclaims.

42. Counter-defendants allege that paragraph 42 of the Counterclaims is so indefinite in its use of the term "designated assets" as not to permit Counter-defendants to truthfully admit or deny the allegations of paragraph 42 of the Counterclaims, and on that basis deny

such allegations. Counter-defendants allege that to the extent, if any, that Counter-defendants did not transfer assets to ERIX within the scope of the Asset Transfer and Subscription Agreement or the General Conveyance and Assumption Agreement, ERIX has suffered no damage as a consequence. Except as alleged above, Counter-defendants deny the allegations contained in paragraph 42 of the Counterclaims.

43. Counter-defendants deny the allegations contained in paragraph 43 of the Counterclaims.

44. Counter-defendants deny the allegations contained in paragraph 44 of the Counterclaims.

45. Counter-defendants deny the allegations contained in paragraph 45 of the Counterclaims.

46. In response to paragraph 27 of the Counterclaims, Counter-defendants incorporate paragraphs 1 through 45 above.

47. Counter-defendants allege that the provisions of the License Agreement referenced in the Counterclaims speak for themselves. Except as alleged above, Counter-defendants deny the allegations contained in paragraph 47 of the Counterclaims.

48. Counter-defendants admit that Eaton Leonard, Inc. granted royalty bearing licenses in certain patents to "Pedrazoli, Bema and Trumpf Pulzer" after May 29, 2000. Counter-defendants admit that Eaton Leonard, Inc. failed to pay maintenance fees on certain of the patents designated in Schedule A to the License Agreement and that, as alleged above, such patents had been assigned to Eagle Precision Technologies, Inc. before May 29, 2000 and as such were pledged to Canadian Imperial Bank of Commerce as collateral for repayment of indebtedness of Eagle Precision Technologies, Inc. to Canadian Imperial Bank of Commerce. Except as alleged above, Counter-defendants deny the allegations contained in paragraph 48 of the Counterclaims.

49. Counter-defendants allege that if the License Agreement is "interlocking" as alleged by ERIX, it has not performed all conditions covenants and promises on its part to be performed under such Agreement, as alleged in the Complaint in this action. Beyond that,

{4435.011-00191541.DOC- ()}                -9-
ANSWER OF COUNTER-DEFENDANTS TO COUNTERCLAIMS

Counter-defendants presently lack knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph 49 of the Counterclaims and, on that ground, deny those allegations.

50. Counter-defendants deny the allegations contained in paragraph 50 of the Counterclaims, and particularly deny that ERIX has suffered any damage in any amount at all.

51. Counter-defendants deny the allegations contained in paragraph 51 of the Counterclaims.

52. Counter-defendants deny the allegations contained in paragraph 52 of the Counterclaims.

53. Counter-defendants deny the allegations contained in paragraph 53 of the Counterclaims.

54. In response to paragraph 54 of the Counterclaims, Counter-defendants incorporate paragraphs 1 through 53 above.

55. Counter-defendants allege that paragraph 55 of the Counterclaims is indefinite in its use of the phrase "certain VMM materials that Eagle Services was using" in that it cannot be determined what "materials" are referenced, and as such Counter-defendants cannot truthfully admit or deny such allegations, and on that basis, deny such allegations. Counter-defendants admit that after cancellation of the Services Agreement Eagle Technologies Services, Ltd. has continued to provide services on certain ERIX products. Except as alleged above, Counter-defendants deny the allegations contained in paragraph 55 of the Counterclaims.

56. Counter-defendants have not, to the date of this Answer, been able to locate a copy of the "Sublease" referred to on the Counterclaims. Counter-defendants allege that the provisions of the Sublease referenced in the Counterclaims speak for themselves. Except as alleged, Counter-defendants do not have sufficient information or belief to allow them to truthfully admit or deny the allegations contained in paragraph 56 of the Counterclaims, and on that basis, deny such allegations.

RUTTER
HOBBS
DAVIDOFF
INCORPORATED
LAWYERS

{4435.011-00191541.DOC- ()} -10-
ANSWER OF COUNTER-DEFENDANTS TO COUNTERCLAIMS

57. Counter-defendants do not have sufficient information or belief to allow them to truthfully admit or deny the allegations contained in paragraph 57 of the Counterclaims, and on that basis, deny such allegations.

58. Counter-defendants have not, to the date of this Answer, been able to locate a copy of the "Sublease" referred to on the Counterclaims. Except as alleged, Counter-defendants do not have sufficient information or belief to allow them to truthfully admit or deny the allegations contained in paragraph 58 of the Counterclaims, and on that basis, deny such allegations.

59. Counter-defendants have not, to the date of this Answer, been able to locate a copy of the "Sublease" referred to on the Counterclaims. Counter-defendants admit that Eaton Leonard, Inc. was involved in a dispute with the landlord of the premises referred to in the Counterclaims, and that for a period of time did not pay rent to the landlord. Counter-defendants are informed and believe that ERIX was not "evicted" from the premises referred to in the Counterclaims. Except as alleged above, Counter-defendants deny the allegations contained in paragraph 59 of the Counterclaims.

60. Counter-defendants deny the allegations contained in paragraph 60 of the Counterclaims.

61. Counter-defendants do not have sufficient information or belief to allow them to truthfully admit or deny the allegations contained in paragraph 61 of the Counterclaims, and on that basis, deny such allegations.

62. Counter-defendants deny the allegations contained in paragraph 62 of the Counterclaims.

63. In response to paragraph 63 of the Counterclaims, Counter-defendants incorporate paragraphs 1 through 62 above.

64. Counter-defendants deny that CIBC was in control of Eagle Precision Technologies, Inc., Eagle Technologies Services, Ltd. or Eaton Leonard, Inc. With respect to the awareness of Canadian Imperial Bank of Commerce of the particular terms and conditions of the referenced agreements at the time they were signed or before, Counter-

defendants do not have sufficient information or belief to allow them to truthfully admit or deny such allegations and, on that basis, deny such allegations. Counter-defendants admit that to the extent the assets of Eaton Leonard, Inc. were not assigned or pledged to Eagle Precision Technologies, Inc., they are in the possession of Hamer as the assignee for the benefit of the creditors of Eaton Leonard, Inc. Except as alleged above, Counter-defendants deny the allegations contained in paragraph 64 of the Counterclaims.

65. With respect to the knowledge of Canadian Imperial Bank of Commerce about the particulars of title and ownership of the particular assets involved in transactions referred to in the Counterclaims, Counter-defendants do not have sufficient information or belief to allow them to truthfully admit or deny the allegations contained in paragraph 65 of the Counterclaims and, on that basis, deny such allegations.

66. Counter-defendants deny the allegations contained in paragraph 66 of the Counterclaims.

67. Counter-defendants deny the allegations contained in paragraph 67 of the Counterclaims.

68. Counter-defendants deny the allegations contained in paragraph 68 of the Counterclaims.

69. In response to paragraph 69 of the Counterclaims, Counter-defendants incorporate paragraphs 1 through 68 above.

70. Counter-defendants allege that the provisions of the various agreements referenced in the Counterclaims, and the representations made in them, speak for themselves. Except as expressly alleged above, Counter-defendants deny the allegations contained in paragraph 70 of the Counterclaims.

71. Counter-defendants allege that at the time of entering into the various written agreements alleged in the Counterclaims, Eaton Leonard, Inc. was in "possession" of and was entitled to use of the assets transferred by it to ERIX under such agreements. Counter-defendants admit that at such time, Eaton Leonard, Inc. was not the beneficial owner of record of certain such assets. Counter-defendants allege that to any extent that Eaton

Leonard, Inc. was not the beneficial owner of certain assets renders any representation made by Eaton Leonard, Inc. or others in the various agreements untrue, they believe that all parties to the transactions were actually or constructively aware of such facts at the time the transactions were entered into. Counter-defendants allege, also, that to the extent the fact Eaton Leonard, Inc. was not the beneficial owner of record of certain such assets rendered any representation made by Eaton Leonard, Inc. or others in the various agreements untrue, ERIX has not been harmed as a result. Counter-defendants allege, also, that when the subject agreements were made, no representation made by any representative of Counter-defendants that was known by them to have been untrue. Except as alleged above, Counter-defendants deny the allegations contained in paragraph 71 of the Counterclaims.

72. Counter-defendants deny the allegations contained in paragraph 72 of the Counterclaims.

73. Counter-defendants deny the allegations contained in paragraph 73 of the Counterclaims.

74. Counter-defendants deny the allegations contained in paragraph 74 of the Counterclaims.

75. Counter-defendants deny the allegations contained in paragraph 75 of the Counterclaims.

76. In response to paragraph 76 of the Counterclaims, Counter-defendants incorporate paragraphs 1 through 75 above.

77. Counter-defendants allege that at the time of entering into the various written agreements alleged in the Counterclaims, Eaton Leonard, Inc. was in "possession" of and was entitled to use of the assets transferred by it to ERIX under such agreements. Counter-defendants admit that at such time, Eaton Leonard, Inc. was not the beneficial owner of record of certain such assets. Counter-defendants allege that to any extent that Eaton Leonard, Inc. was not the beneficial owner of certain assets renders any representation made by Eaton Leonard, Inc. or others in the various agreements untrue, they believe that all parties to the transactions were actually or constructively aware of such facts at the time the

RUTTER HOBBS & DAVIDOFF INCORPORATED LAWYERS

transactions were entered into. Counter-defendants allege, also, that to the extent the fact Eaton Leonard, Inc. was not the beneficial owner of record of certain such assets rendered any representation made by Eaton Leonard, Inc. or others in the various agreements untrue, ERIX has not been harmed as a result. Counter-defendants allege, also, that when the subject agreements were made, no representation made by any representative of Counter-defendants that was known by them to have been untrue. Except as alleged above, Counter-defendants deny the allegations contained in paragraph 77 of the Counterclaims.

78. Counter-defendants deny the allegations contained in paragraph 78 of the Counterclaims, and deny that as a matter of law punitive damages may be recovered for misrepresentations made negligently.

79. Counter-defendants deny the allegations contained in paragraph 79 of the Counterclaims.

80. In response to paragraph 80 of the Counterclaims, Counter-defendants incorporate paragraphs 1 through 79 above.

81. Counter-defendants deny the allegations contained in paragraph 81 of the Counterclaims, and allege that to the extent any statements have been made by Counter-defendants about ERIX to third persons, such statements have been true and/or privileged.

82. Counter-defendants deny the allegations contained in paragraph 82 of the Counterclaims, and particularly deny that ERIX has suffered damage as a result of the conduct of Counter-defendants in any amount or at all.

83. Counter-defendants deny the allegations contained in paragraph 83 of the Counterclaims.

84. Counter-defendants deny the allegations contained in paragraph 84 of the Counterclaims.

85. In response to paragraph 85 of the Counterclaims, Counter-defendants incorporate paragraphs 1 through 84 above.

86. Counter-defendants deny the allegations contained in paragraph 86 of the Counterclaims.

RUTTER
HOBBS
DAVIDOFF
INCORPORATED
LAWYERS

{4435.011-00191541.DOC- ()} -14-
ANSWER OF COUNTER-DEFENDANTS TO COUNTERCLAIMS

87. Counter-defendants deny the allegations contained in paragraph 87 of the Counterclaims, and particularly deny that ERIX has suffered damage as a result of the conduct of Counter-defendants in any amount or at all.

88. Counter-defendants deny the allegations contained in paragraph 88 of the Counterclaims.

89. Counter-defendants deny the allegations contained in paragraph 89 of the Counterclaims.

90. In response to paragraph 90 of the Counterclaims, Counter-defendants incorporate paragraphs 1 through 89 above.

91. Counter-defendants deny the allegations contained in paragraph 91 of the Counterclaims.

92. Counter-defendants deny the allegations contained in paragraph 92 of the Counterclaims, and particularly deny that ERIX has suffered damage as a result of the conduct of Counter-defendants in any amount or at all.

93. Counter-defendants deny the allegations contained in paragraph 88 of the Counterclaims.

94. Counter-defendants deny the allegations contained in paragraph 89 of the Counterclaims.

95. In response to paragraph 95 of the Counterclaims, Counter-defendants incorporate paragraphs 1 through 94 above.

96. Counter-defendants deny the allegations contained in paragraph 96 of the Counterclaims.

97. Counter-defendants deny the allegations contained in paragraph 97 of the Counterclaims, and particularly deny that ERIX has suffered damage as a result of the conduct of Counter-defendants in any amount or at all.

98. Counter-defendants deny the allegations contained in paragraph 98 of the Counterclaims.


RUTTER
HOBBS &
DAVIDOFF
INCORPORATED
LAWYERS

{4435.011-00191541.DOC- ()}  -15-
ANSWER OF COUNTER-DEFENDANTS TO COUNTERCLAIMS

99. Counter-defendants deny the allegations contained in paragraph 99 of the Counterclaims.

100. In response to paragraph 100 of the Counterclaims, Counter-defendants incorporate paragraphs 1 through 99 above.

101. Counter-defendants admit that there are disputes among the parties with respect to certain trademarks, trade names and patent rights which should be resolved by this court if they cannot be resolved among the parties.

102. Counter-defendants deny the allegations contained in paragraph 102 of the Counterclaims.

103. Counter-defendants deny the allegations contained in paragraph 103 of the Counterclaims.

104. Counter-defendants deny the allegations contained in paragraph 104 of the Counterclaims.

105. Counter-defendants deny the allegations contained in paragraph 105 of the Counterclaims, and deny that there has been a dispute over ERIX right title and interest in patent number 4,849,643, and the parties resolved any issue about patent number 5,008,555 in the letter of intent referred to in paragraph 24 of this Answer. Except as expressly alleged, Counter-defendants deny the allegations contained in paragraph 105 of the Counterclaims.

106. Counter-defendants deny the allegations contained in paragraph 106 of the Counterclaims.

107. Counter-defendants deny the allegations contained in paragraph 107 of the Counterclaims.

### FIRST AFFIRMATIVE DEFENSE

1. The Counterclaims and the allegations set forth therein fail to state facts sufficient to constitute a claim for relief against Counter-defendants.

### SECOND AFFIRMATIVE DEFENSE

2. Each and every cause of action set forth in the Counterclaims is barred by the doctrine of unclean hands.

### THIRD AFFIRMATIVE DEFENSE

3. Each and every cause of action set forth in the Counterclaims is barred by the doctrines of laches, estoppel and acquiescence and similar equitable principles.

### FOURTH AFFIRMATIVE DEFENSE

4. Under the parties' agreements, the use of the trademarks, trade names and patent rights transferred to ERIX was limited to the business of manufacture of small diameter metal tube benders, the business of manufacturing the "VB200HP" and the business formerly conducted by Eaton Leonard, Inc. of manufacturing metal tube measuring devices as referenced in the parties' agreements, in which connection ERIX has had free and unfettered use of all transferred assets.

### FIFTH AFFIRMATIVE DEFENSE

5. Under the parties' agreements, the use of the trademarks, trade names and patent rights transferred to ERIX was limited to the business of manufacture of small diameter metal tube benders, the business of manufacturing the "VB200HP" and the business formerly conducted by Eaton Leonard, Inc. of manufacturing metal tube measuring devices as referenced in the parties' agreements. Since approximately November 2001, ERIX has systematically converted the use of the transferred assets, and in particular the trademarks, trade names and patent rights, in breach of the parties' agreements, to compete unfairly with Counter-defendants in the medium and large tube bending businesses, as alleged in the Complaint in this action. Since about November 2001, ERIX and others acting in concert with it, have engaged in the systematic and pernicious conversion of assets of Eaton Leonard, Inc. and Eagle Precision Technologies, Inc. not transferred to ERIX for use in unfair and unlawful competition with Counter-defendants. Counter-defendants deny that ERIX is entitled to any recovery in this action, but if it is, Counter-defendants allege that they are entitled to set-off the damages suffered by Counter-defendants as a result of such unfair competition by ERIX and those acting with ERIX, as more fully alleged in the Complaint filed in this action.

WHEREFORE, Counter-defendants pray for judgment as follows:

1     A.    That ERIX takes nothing by way of the Counterclaims and that the same be dismissed with prejudice;

    B.    For Counter-defendants' attorneys' fees incurred to the extent that is permitted by statute or law;

    C.    For Counter-defendants' costs of suit herein; and

    D.    For such other and further relief as the Court deems just and proper.

DATED: May 27, 2003

RUTTER HOBBS & DAVIDOFF INCORPORATED

BY /s/ _____
FRANK D. HOBBS
Attorneys for Plaintiffs and Counter-defendants EAGLE PRECISION TECHNOLOGIES, INC., EAGLE TECHNOLOGIES, LTD. and Counter-defendant EATON LEONARD, INC.

{4435.011-00191541.DOC- 0}

-18-

ANSWER OF COUNTER-DEFENDANTS TO COUNTERCLAIMS

## PROOF OF SERVICE BY U.S. MAIL

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California. I am over the age of 18 years and not a party to the within action; my business address is 1900 Avenue of the Stars, Suite 2700, Los Angeles, California 90067.

On May 27, 2003, I served the **ANSWER OF COUNTER-DEFENDANTS EAGLE PRECISION TECHNOLOGIES, INC., EAGLE TECHNOLOGIES SERVICES, LTD. AND EATON LEONARD, INC. TO COUNTERCLAIMS** on the interested parties in this action by mailing a true and correct copy thereof in a sealed envelope, addressed as follows:

M. Richardson Lynn, Jr., Esq.
Wagner, Anastopulos & Lynn, LLP
701 "B" Street, Suite 1601
San Diego, California 92101

Kenneth M. Fitzgerald, Esq.
Latham & Watkins
701 "B" Street, Suite 2100
San Diego, California 92101

Frederick S. Berretta, Esq.
Johnfar F. Kerlee, Esq.
Knobbe, Martens, Olson & Bear, LLP
550 West "C" Street, Suite 1200
San Diego, California 92101

I caused such envelope to be deposited in the mail at Los Angeles, California.

I am readily familiar with this law firm's practice of collection and processing correspondence for mailing. It is deposited with the U. S. Postal Service on the same day in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if the postal cancellation date or postage meter date is more than one day after the date of deposit indicated for mailing in this affidavit.

Executed on May 27, 2003, at Los Angeles, California.

I declare that I am employed in the office of a member of the Bar of this Court at whose direction this service was made.

_Patricia A. Botham_
DECLARANT

{4435.011-00186826.DOC- ()}